## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| PETER HILBURN, | : | Civil Action No. 2:07-cv-06064 |
| Plaintiff, | : | |
| v. | : | OPINION |
| DEPARTMENTOF CORRECTIONS; AL ORTIZ, *individually and in his official capacity*; GERALD KENNEDY, *individually and in his official capacity*; FRED ARMSTRONG, *individually and in his official capacity*; JAMES BARBO, *individually and in his official capacity*; GEORGE HAYMEN, *individually and in his official capacity*; and WILLIAM PLANTIER, *individually and in his official capacity*, | : | THE HON. WILLIAM J. MARTINI |
| Defendants. | : | |

## MEMORANDUM OPINION[1]

### I.    INTRODUCTION

Plaintiff Peter Hilburn ("Plaintiff") filed a complaint ("Compl."), (Doc. No. 1), in

the present action on December 21, 2007.  On January 9, 2008, Plaintiff filed an amended

ten-count complaint ("Am. Compl."), (Doc. No. 2), against the State of New Jersey

Department of Corrections (the "DOC") and six individual defendants, Al Ortiz, Gerald

---

[1] For the convenience of the reader of this document in electronic format, hyperlinks to the Court's record and to authority cited herein may be inserted. No endorsement of any provider of electronic or other resources is intended by the Court's practice of using hyperlinks.

Kennedy, Fred Armstrong, James Barbo, George Hayman,[2] and William Plantier (the "Individual Defendants," and, collectively with the DOC, the "Defendants").  Generally, Plaintiff alleges that he was wrongfully terminated by his employer, the DOC, on or about April 8, 2006,[3] at a time when he was an employee at East Jersey State Prison in or at Rahway, New Jersey.

Plaintiff puts forward three federal claims.  In Count One, Plaintiff alleges that Defendants deprived him of his First Amendment free expression and petition rights.  He asserts his First Amendment rights under the Fourteenth Amendment and under 42 U.S.C. § 1983.  In Count Two, Plaintiff alleges that Defendants engaged in retaliatory conduct that violated Title VII of the Civil Rights Act of 1964, codified as amended at 42 U.S.C. § 2000e *et seq.* ("Title VII").  In Count Six, Plaintiff alleges that Defendants violated the Family and Medical Leave Act of 1993 (the "FMLA Count"), codified as amended at 29 U.S.C. § 2601 *et seq.*[4]

The remaining counts are grounded in state law.  In Count Three, Plaintiff alleges intentional and/or negligent infliction of emotional distress.  In Count Four, Plaintiff alleges that the DOC negligently appointed, hired, and retained the individual defendants by failing to oversee their work.  In Count Five, Plaintiff alleges that the DOC and

---

[2] Defendant George Hayman's surname is alternately spelled "Haymen" or "Hayman" in various filings in this matter.  With the exception of the caption, this Memorandum uses the latter spelling, as this version appears in the caption of Defendants' motion and reply briefs.

[3] It appears from Plaintiff's amended complaint that he was employed by the DOC and worked at the East Jersey State Prison; he was Special Assistant to the Administrator of the East Jersey State Prison, Al Ortiz.  *See* Am. Compl. ¶¶ 10, 16-17.

[4] Plaintiff also asserts unspecified Fifth Amendment rights. *Id*. ¶ 1.

perhaps Individual Defendants are liable under respondeat superior for the wrongdoing by the Individual Defendants.  In Count Seven, Plaintiff alleges that he had a reasonable expectation of prospective economic advantage and Defendants caused Plaintiff to lose this advantage by wrongfully terminating his employment.  In Count Eight, Plaintiff alleges that Defendants violated Article I, paragraphs 1 and 6, of the New Jersey Constitution, providing for, *inter alia*, a right to free speech.  It appears that Plaintiff seeks to vindicate this right under N.J. Stat. Ann. § 10:6-2.  In Count Nine, Plaintiff alleges that Defendants wrongfully terminated Plaintiff in retaliation for Plaintiff's exercise of rights; however, Plaintiff's filings do not expressly clarify whether this claim arises under federal or state law or both.  Plaintiff's filings cite no statutory basis for this count.  It appears to be asserted as a common law claim under state law or is otherwise redundant with the Section 1983 and Title VII claims.  In Count Ten, Plaintiff alleges that Defendants breached his rights under the DOC's employee manual.

In sum, Plaintiff's Amended Complaint alleges that the Defendants violated Plaintiff's rights under federal and state constitutional law, under federal and state statutory law, and under a variety of state common law doctrines, when they suspended and later terminated Plaintiff's employment.  In terms of relief, Plaintiff's complaint seeks compensatory damages, punitive damages, reinstatement of employment, attorneys' fees, and interest and costs of suit.  *See* Am. Compl. ¶ 101.

Pending before the Court is Defendants' Motion for Judgment on the Pleadings (the "Motion"), on behalf of Defendants State of New Jersey Department of Corrections, Al Ortiz, James Barbo, George Hayman, and William Plantier (collectively, the "Moving

Defendants").[5]  The Moving Defendants seek dismissal of all counts, except Count Six. Thus, without regard to how this motion is decided, this action will proceed in regard to Count Six.[6]

The Motion is fully briefed.  *See* Defendants' Brief in Support of Motion for Judgment on the Pleadings (the "Defs' Opening Br."), (Doc. No. 35-3), Plaintiff's Brief in Opposition to Defendants' Motion for Judgment on the Pleadings (the "Plf's Opp. Br."), (Doc. No. 38), Defendants' Reply Brief in Further Support of Motion for Judgment on the Pleadings (the "Defs' Reply Br."), (Doc. No. 40).  Having considered the parties' filings, federal and state constitutional law, federal and state statutory law, case law, and persuasive scholarly authority, the Court, for the reasons elaborated below, will **GRANT** in part and **DENY** in part Moving Defendants' Motion.  The Court will:

> (A) dismiss Count One (the Section 1983 Count) against DOC, and against the Individual Defendants in their official capacities (but not their individual capacities[7]);
> (B) dismiss Count Two (the Title VII Count) against DOC and the Individual Defendants;
> (C) dismiss Counts Three, Four, Five, Seven, and Nine (state law counts) against DOC, and against the Individual Defendants in their official and individual capacities;
>     and,

---

[5] Default judgment was entered against Defendant Gerald Kennedy on June 17, 2009. Defendant Fred Armstrong appears to be represented by other counsel, who has not taken action to join in this motion.

[6] Count Six pleads a federal cause of action.  Although the Defendants plead sovereign immunity in regard to other federal causes of action, they do not do so in regard to Count Six.  Sovereign immunity is not jurisdictional; it is quasi-jurisdictional.  It must be pled as an affirmative defense and raised by motion; hence, the Court will not reach this issue *sua sponte*.  *Christy v. Penn. Turnpike Comm'n*, 54 F.3d 1140, 1144 (3d Cir. 1995).

[7] In regard to the Section 1983 Count, Defendants have not sought dismissal against the individual Defendants in their individual capacities.

4

(D) dismiss Counts Eight and Ten (state law counts) against DOC and the Individual Defendants in their official capacities (but not their individual capacities).

Therefore, this action will go forward in regard to Count Six (the FMLA Count) against all Defendants, because dismissal has not been sought, and in regard to Count One (the Section 1983 Count) against the individual Defendants in their individual capacities only, and in regard to Counts Eight and Ten (state law counts) against the Individual Defendants in their individual capacities only.


## II. FACTS AND PROCEDURAL BACKGROUND

Generally, the allegations put forward in the Amended Complaint are as follows. Plaintiff alleges that, several years ago, illegal bid-rigging plagued the East Jersey State Prison (the "Prison"). In the summer of 2005, the Prison's Business Administrator, Ed Guz, reported at a morning briefing that "rampant and illegal bid-rigging [was] taking place" at the Prison. Am. Compl. ¶ 18. Guz repeated the allegation several times during the meeting in the presence of various officials as recorded by a stenographer's minutes. *Id.* Plaintiff's supervisor, Al Ortiz, attended this meeting. *Id.* On or about August 2, 2005, Plaintiff filed an internal complaint with the DOC's Equal Employment Division (the "EED Complaint"). (Doc. No. 38, Ex. B.)

The bid-rigging allegations traced back to the Assistant Director of the DOC, Gerald Kennedy. *Id.* ¶¶ 20-21. Kennedy owned a company that reportedly made three bids for construction contracts at the Prison. *Id.* ¶ 20.

After the meeting, Plaintiff discussed the matter with his supervisor, Ortiz, at least three times. *Id.* ¶ 22. Plaintiff urged Ortiz to report the matter, and Ortiz responded, after questioning by Plaintiff, that he had already reported the bid-rigging to Kennedy. *Id.* ¶ 23. Plaintiff then advised Ortiz to report the matter to an outside law enforcement agency, as the behavior was illegal. *Id.* ¶ 24. Ortiz then threatened to fire Plaintiff if he "continued to complain." *Id.* ¶ 24.

Subsequently, a corrections officer approached Plaintiff regarding bid-rigging and various illegal activity at the Prison, and the two filed a formal complaint with the United States Attorney General. *Id.* ¶¶ 26-27. Thereafter, Plaintiff was suspended. *Id.* ¶ 29. (The Amended Complaint leaves unclear the date on which he was suspended.) He was told, though it is unclear by whom, that the suspension was based on false reports he made in the EED Complaint. *Id.* ¶¶ 30-31.

Plaintiff then took an approved medical leave for a health condition. *Id.* ¶¶ 32, 71-73. On or about April 8, 2006, two days before his scheduled return from this leave, the DOC terminated Plaintiff's employment. *Id.* ¶ 33. Thereafter, on or about January 29, 2007, Plaintiff filed a charge with the Equal Employment Opportunity Commission, (Defs' Reply Br., Nestor Certif., Ex. A[8]), alleging that the DOC engaged in employment discrimination against him, in violation of Title VII, the Age Discrimination in Employment Act (the "ADEA"), codified as amended at 29 U.S.C. § 621 *et seq*., and the

---

[8] As discussed below, this document may be considered on several grounds, although not attached to the initial moving papers.

Americans with Disabilities Act (the "ADA"), codified as amended at 42 U.S.C. § 12101 *et seq.* *See* Defs' Reply Br., Nestor Certif., Ex. A.

The Commission issued a right-to-sue letter in the matter, dated August 16, 2007. Plf's Opp. Br., Ex. A.  Subsequently, Plaintiff filed a complaint in this action in this Court on December 21, 2007, (Doc. No. 1), later superseded by the amended complaint of January 9, 2008, (Doc. No. 2).  Defendants New Jersey Department of Corrections and Hayman filed an answer and affirmative defenses, (Doc. No. 10), on March 27, 2008. Defendants Ortiz, Armstrong, Barbo, and Plantier filed a (revised) answer and affirmative defenses, (Doc. No. 21), on September 24, 2008.  On August 14, 2009, the Moving Defendants filed the instant Motion, (Doc. No. 35), pursuant to Fed. R. Civ. P. 12(c).  On September 8, 2009, Plaintiff filed a brief opposing the motion, (Doc. No. 38). Defendants filed their reply on September 28, 2009, (Doc. No. 40).


## III.    STANDARD OF REVIEW

Defendants' motion for judgment on the pleadings is brought pursuant to Fed. R. Civ. P. 12(c).  *See* Defs' Opening Br. at 1, (Doc. No. 35-3).  This rule provides for judgment on the pleadings after the pleadings are closed but sufficiently early "not to delay trial."  Fed. R. Civ. P. 12(c).  The well-known standard governing dismissals under Rule 12(b)(6) also applies to Rule 12(c) motions.  *Turbe v. Gov't of Virgin Islands*, 938 F.2d 427, 428 (3d Cir. 1991).

Pursuant to Rule 12(b)(6), the moving party bears the burden of showing that no claim has been stated, *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005), and

dismissal is appropriate only if, accepting all of the facts alleged in the complaint as true, the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007) (abrogating "no set of facts" language found in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).  The facts alleged must be sufficient to "raise a right of relief above the speculative level." *Twombly*, 550 U.S. at 555.  This requirement "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of" necessary elements of the plaintiff's cause of action.  *Id.*  Furthermore, in order to satisfy federal pleading requirements, the plaintiff must "provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (brackets and quotation marks omitted) (quoting *Twombly*, 550 U.S. at 555).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007).  The court may also consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] document[s]." *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993).  Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002).

## IV.   ANALYSIS

Moving Defendants' Motion makes a variety of arguments in support of dismissal. This memorandum opinion addresses each of the Moving Defendants' arguments in turn.

### A.   Eleventh Amendment Sovereign Immunity Defense in Relation to Count One (the Section 1983 Count) and the State Law Counts

Defendants assert Eleventh Amendment sovereign immunity with respect to Count One (the Section 1983 Count), and all state law counts, i.e., Counts Three, Four, Five, Seven, Eight, Nine, and Ten.[9]  Defs' Opening Br. at 8-10; Defs' Reply Br. at 12-14.  The concept of sovereign immunity derives from the Eleventh Amendment of the United States Constitution, pursuant to which "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. amend. XI.   The Supreme Court of the United States has explained that sovereign immunity bar suits against non-consenting States by individuals relying on either state or federal causes of action.  *Hans v. Louisiana*, 134 U.S. 1, 17 (1890).  However, in certain circumstances, Congress may abrogate States' sovereign immunity.  Congress's intent to do so must be expressed unequivocally and it must act "pursuant to a valid exercise of power."  *Seminole Tribe of Florida v. Florida*, 517 U.S.

---

[9] Eleventh Amendment sovereign immunity, at its limit, is applicable to the individual defendants in their official capacities only, as Defendants argue in their opening brief and reply.  Defs' Opening Br. at 10; Defs' Reply Br. at 12-14.  Plaintiff argues extensively the issue of whether the Individual Defendants possess immunity in their individual capacities.  *See* Plf's Opp. Br. at 17-19.  The Moving Defendants do not seek dismissal of the claims against the Individual Defendants in their individual capacities based on Eleventh Amendment sovereign immunity, see Defs' Reply Br. at 14, and the Court accordingly does not address the issue.

44, 55 (1996) (quoting *Green v. Mansour*, 474 U.S. 64, 68 (1985)); *see, e.g.*, *Fitzpatrick v. Blitzer*, 427 U.S. 445, 456 (1976) (holding that Eleventh Amendment immunity is "necessarily limited by the enforcement provisions of § 5 of the Fourteenth Amendment").

       1.    Section 1983 Count

Count One alleges that Defendants violated Plaintiff's federal constitutional rights, which may be vindicated under 42 U.S.C. § 1983.  Am. Compl. ¶¶ 36-45.  Section 1983 provides a vehicle for vindicating rights granted under the United States Constitution and under federal statutory law when state actors have violated federal rights although acting under the color of law.  42 U.S.C. § 1983.  The Supreme Court has squarely held that Congress did *not* intend for § 1983 to abrogate states' Eleventh Amendment immunity. *See* *Quern v. Jordan*, 440 U.S. 332, 342-45 (1979).  As a result, if New Jersey's Eleventh Amendment immunity is available to the Defendants, a § 1983 claim is unavailable to Plaintiff.  *See id.*  Thus, the issue becomes whether the DOC is considered the state or a state entity for the purposes of the Eleventh Amendment, and whether the Individual Defendants may also make use of the state's immunity.  Because Moving Defendants seek dismissal on sovereign immunity grounds against the Individual Defendants only in their official, not individual, capacities, the Court considers only whether the Individual Defendants in their official capacities may rely on Eleventh Amendment immunity.  *See* Defs' Reply Br. at 12-14.

The DOC is a state entity.  The Third Circuit has developed a multi-factor test for determining when an entity is covered by a state's Eleventh Amendment immunity.  *See,*

*e.g.*, *Kovats v. Rutgers Univ.*, 822 F.3d 1303, 1307 (3d Cir. 1987).  The factors include: "(1) the source of the money that would pay the judgment (i.e., whether that source would be the state); (2) the status of the entity under state law; and (3) the degree of autonomy the entity has." *Benn v. First Judicial Dist. of Penn.*, 426 F.3d 233, 239 (3d Cir. 2005).  *Compare* *Fitchik v. N.J. Transit Rail Operations, Inc.*, 873 F.2d 655, 658-59 (3d Cir. 1989) (noting primacy of the first factor, i.e., the "source of the money that would pay the judgment"), *with* *Benn*, 426 F.3d at 240 ("relegat[ing] … financial liability to the status of one factor co-equal with others in the immunity analysis").

However, the aim of the test is simply to determine the ultimate question of whether "the state is the real party in interest" when suit is brought against a state entity. *Fitchik*, 873 F.2d at 659.  The District of New Jersey has had occasion to squarely face the question of "whether the [New Jersey] Corrections Department is … the alter ego of the State of New Jersey such that the state is the real party in interest when claims are asserted against it."  *Snyder v. Baumecker*, 708 F. Supp. 1451, 1455 (D.N.J. 1989) (collecting state statutory law–still in force–supporting the position that the DOC is an arm of the state and concluding that it thereby acquires Eleventh Amendment immunity in regard to a Section 1983 claim).  Thus, although the *Snyder* court did not expressly rely on the Third Circuit's multi-factor test, the target of the inquiry—the identity of the real party in interest—was the same.  It concluded that the DOC, a state entity, is entitled to Eleventh Amendment immunity.  *Id.* at 1456.[10]  This Court agrees.

---

[10] This Court finds the panel decision and the dissent's opinion in *Cochran v. Pinchak*, 401 F.3d 184 (3d Cir. 2005), *vacated on other grounds*, 412 F.3d 500 (3rd Cir. 2005),

The remaining question is whether the Individual Defendants in their official capacities may be sued pursuant to § 1983.  The Supreme Court of the United States has answered this question in the negative.  *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office….  As such, it is no different from a suit against the State itself." (citations omitted)).  Pursuant to *Will*, state officials acting in their official capacities are not "persons" subject to suit within the meaning of Section 1983.  *Id.* at 71.  The Individual Defendants were employees of the DOC or of its East Jersey State Prison, see Am. Compl. ¶¶ 8-15.  In their official capacity, each of the individual Defendants is immune from suit just as the DOC or the State of New Jersey itself is immune. *See, e.g.*, *Laskaris v. Thornburgh*, 661 F.2d 23, 25-26 (3d Cir. 1981).

"[T]he relief sought by a plaintiff suing a State is irrelevant to the question whether the suit is barred by the Eleventh Amendment." *Seminole Tribe*, 517 U.S. at 58 (citation omitted).  Furthermore, just "as when the State itself is named as the defendant, a suit against state officials that is in fact a suit against a State [i.e., an official capacity suit] is barred regardless of whether it seeks damages or injunctive relief." *Pennhurst*, 465 U.S. at 101-02 (citation omitted).  Here, Plaintiff appears to seek both damages and

---

highly persuasive in regard to the question before this Court.  In *Cochran*, the question was whether a New Jersey state prisoner could bring an action in federal court against the DOC under Title II of the Americans with Disabilities Act (the "ADA"). The majority found that the ADA did not abrogate the DOC's sovereign immunity under the Eleventh Amendment; the dissent found that the ADA did abrogate the DOC's sovereign immunity.  Not one judge on the panel questioned that the Eleventh Amendment applied to the DOC. The question was only whether Congress had abrogated that immunity.

injunctive relief.  Am. Compl. ¶¶ 45, 101(a).  Plaintiff, invoking a purported exception to Eleventh Amendment immunity, suggests that immunity does not apply to actions challenging a state official's conduct on the basis of constitutionality.  *See* Plf's Opp. Br. at 15 (citing *Snyder*, 708 F. Supp. at 1457).  In regard to Plaintiff's seeking relief against the individual defendants in their official capacity, this exception is, in fact, limited to *prospective* injunctive relief against state officials acting unconstitutionally because they are "stripped of [their] representative character" in so acting.  *Snyder*, 708 F. Supp. at 1457; *see also Ex parte* *Young*, 209 U.S. 123 (1908); *Pennhurst*, 465 U.S. at 102-03. This singular exception is simply not at issue on the facts alleged here.  Plaintiff has been fired; he is not at risk of being fired again; he has no standing to seek prospective injunctive relief.  In other words, plaintiff must demonstrate that he faces a "real or immediate threat that [he] would be wronged again" in this manner.  *See* *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983); *Rizzo v. Goode*, 423 U.S. 362 (1976).

Finally, Plaintiff, citing *Clark v Barnard*, 108 U.S. 436, 447-48 (1883), argues that the DOC waived the State's sovereign immunity by its voluntary appearance in this litigation. Plf's Opp. Br. at 15. *Clark* is distinguishable from the instant action: in *Clark*, the state, "appeared in the cause and presented and prosecuted a claim to the fund in controversy, and thereby made itself a party to the litigation to the full extent required for its complete determination." *Id*. at 448. Here, by contrast, the DOC, an arm of the state, has appeared only to defend, has put forward its sovereign immunity defense while this action was in its earliest stages, and appeared in response to service of a complaint and

summons.  Such action does not constitute waiver of its Eleventh Amendment sovereign immunity.

Therefore, Count One will be dismissed against the DOC, and against the individual Defendants in their official (but not individual) capacities.

2.      State Law Counts

Because Eleventh Amendment sovereign immunity is quasi-jurisdictional, claims against a state heard in federal court are only cognizable where the state has consented to suit against it (or Congress has otherwise validly abrogated the state's sovereign immunity).  *Cf., e.g.*, *Seminole Tribe of Florida*, 517 U.S. at 54 (citing *Hans*, 134 U.S. at 13).  Although the holding of *Seminole* and other modern leading cases adjudicate federal causes of action, it would appear that the same analysis applies to state causes of action.  A state cause of action cannot be heard in federal court against a state (or its entities which share in the State's Eleventh Amendment immunity) unless the state has consented to suit (or, unless Congress has validly abrogated the state's sovereign immunity in regard to that state cause of action—a possibility that strikes the Court has highly unlikely).

The state of New Jersey has only consented to suit when the requirements of the New Jersey Tort Claims Act ("NJTCA") are met, which is not the case here.  *See* N.J. Stat. Ann. § 59:8-3 ("No action shall be brought against a public entity or public employee under this act unless the claim upon which it is based shall have been presented in accordance with the procedure set forth in this chapter."); *Port Authority Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 306 (1990) ("A State does not waive its Eleventh

Amendment immunity [merely] by consenting to suit only in its own courts ...."); *Velez v. City of Jersey City*, 850 A.2d 1238, 1241-42 (N.J. 2004). For example, the Third Circuit has recognized that while the NJTCA permits suits against New Jersey in state court, at least in certain circumstances, the NJTCA does not, by its express terms, waive New Jersey's Eleventh Amendment immunity in regard to suits in federal court. *Compare Hyatt v. County of Passaic*, 340 Fed. App'x 833, 837 (3d Cir. 2009) (citing N.J. Stat. Ann. § 59:2-2(a)), *with Feeney*, 495 U.S. at 306 ("Thus, in order for a state statute or constitutional provision to constitute a waiver of Eleventh Amendment immunity, it must specify the State's intention to subject itself to suit in *federal court*." (quotation marks omitted)).

Plaintiff points to no countervailing precedents and makes no argument demonstrating that New Jersey has indeed waived its Eleventh Amendment immunity in regard to suit in federal court. In the absence of an express legislative act indicating a waiver of Eleventh Amendment immunity, sovereign immunity bars Plaintiff's state law counts. *Cf. Allen v. Fauver*, 768 A.2d 1055, 1058-60 (N.J. 2001). Therefore, the state law counts against the DOC and against the individual Defendants (in their official capacities) are barred.

### B. The New Jersey Tort Claims Act Bars Plaintiff's State Law Counts

The Moving Defendants argue that Counts Three, Four, Five, Seven, and Nine, all of which are state law counts, are barred because Plaintiff failed to comply with the requirements of the New Jersey Tort Claims Act. Defendants do not expressly seek

dismissal of Counts Eight or Ten on the grounds of failure to satisfy the NJTCA's requirements.[11]

Defendants argue that Plaintiff (A) did not provide meaningful and timely notice within the time period prescribed by the NJTCA, and (B) did not file suit within the required time.  Plaintiff asserts that his internal complaint, which was filed with the DOC Equal Employment Division and is dated **August 2, 2005**, satisfies this notice requirement, notwithstanding that this date preceded his suspension and his termination, which occurred on **April 8, 2006**.  Plf's Opp. Br. at 13, Ex. B.  Plaintiff's position is extraordinary.

Under the NJTCA, a party seeking to sue a public entity or public employee must provide notice[12] "not later than the ninetieth day after accrual of the cause of action."

---

[11] As explained in the remainder of Part IV[B] of this opinion, the Court adopts Defendants' position in regard to the NJTCA.  Thus all state law claims are barred against the Individual Defendants in their official capacities on sovereign immunity grounds, see Part IV[A][2], and Counts Three, Four, Five, Seven, and Nine are barred against the Individual Defendants in their individual capacities per the NJTCA.  Counts Eight and Ten are barred against the Individual Defendants in their official capacities on sovereign immunity grounds, but not in their individual capacities per the NJTCA, as such relief was not sought.

[12] The Act provides:

> "A claim for damage or injury arising under this act against the State shall be filed either with (1) the Attorney General or (2) the department or agency involved in the alleged wrongful act or omission.  A claim for injury or damages arising under this act against a local public entity shall be filed with that entity."

N.J. Stat. Ann. § 59:8-7.  The notice requirement applies to both negligent and intentional torts.  *See Velez*, 850 A.2d at 1244 ("We conclude that the absence of any reference to negligence within the definition of 'injury' is consistent with the Legislature's intent that

N.J. Stat. Ann. § 59:8-8(a).   "After the expiration of six months from the date notice of claim is received, the claimant may file suit in an appropriate court of law."  *Id*. § 59:8-8.  However, the "claimant shall be forever barred from recovering against a public entity or public employee if … [t]wo years have elapsed since the accrual of the claim."  *Id*. § 59:8-8(b).  Here the action was filed on **December 21, 2007**.  The accrual date is typically, in instances of tortious conduct, the "date of the incident on which the negligent act or omission took place."  *Beauchamp v. Amedio*, 751 A.2d 1047, 1050 (N.J. 2000) (noting also, in a personal injury case, that this date "coincides with the accrual date for a claim for property damage and damage such as wage loss" (citations omitted)); *see also Lassoff v. New Jersey*, 414 F. Supp. 2d 483, 490 n.17 (D.N.J. 2006) ("The accrual date under the [NJTCA] is generally the date on which the alleged tort is committed." (citations omitted)).  Where, as here, notice long precedes the accrual of the claim, April 8, 2006, the date of termination, it makes no sense to speak of timely notice.  To the extent that any cause of action accrued prior to August 2, 2005, the date of the purported notice, and to the extent that such notice complied with the substantive requirements of the NJTCA, the suit was not timely: suit should have been filed within two years, i.e., no later than August 2, 2007, but here it was filed on December 21, 2007.  To the extent that

---

the NJTCA's notice requirements encompass injuries arising from intentional conduct as well as negligent conduct.").  Likewise, public employees receive the same protections against suit as public entities.  *Id.* at 1242-43 (citations omitted).  Failure to comply with the NJTCA's notice provisions, therefore, bars suit against a public entity and any of its employees.  *Id.*; N.J. Stat. Ann. § 59:8-8.  The holding in *Velez* extending the notice requirement to intentional torts applies to causes of action that accrue after June 29, 2004, the date of the *Velez* decision.  *Velez, 850 A.2d at 1246*, 1238.  Nothing in the filings in this case suggests that Plaintiff's claims are based on torts accruing before this date.

Plaintiff would rely on his January 29, 2007 filing with the EEOC as notice under NJTCA, that notice was filed more than ninety days after his April 8, 2006 termination and, therefore, was not timely for the purposes of the NJTCA.[13]

Generally late filings are barred. Even when permitted, the party bringing such claims must meet certain procedural requirements. N.J. Stat. Ann. § 59:8-9 (stating that claimants must make seek the court's permission to file late notice, and this application must consist of a motion "supported by affidavits based upon personal knowledge of the affiant showing sufficient reasons constituting *extraordinary circumstances* for his failure to file" timely notice of claim "or to file a motion seeking leave to file a late notice of claim within a reasonable time thereafter ...." (emphasis added)). Late notice must be made in any event within one year after accrual of the claim. Plaintiff has made no showing in regard to meeting these procedural requirements.

Moreover, even assuming that notice was timely, it failed to comply[14] or even to substantially comply with the requirements of the NJTCA. Substantial compliance with

---

[13] To the extent that Plaintiff's cause of action is tied to his alleged wrongful suspension, rather than the termination, his filings fail to comply with NJTCA. The suspension followed his filing the August 2, 2005 internal complaint. Am. Compl. ¶¶ 30-31. Thus, the internal complaint could not have meaningfully addressed suspension, the alleged wrong. Likewise, his suspension preceded his termination. So just as his January 29, 2007 EEOC charge cannot function as timely notice under the NJTCA for his April 8, 2006 termination, it cannot function as timely notice for his suspension which took place prior to his suspension. In both cases, notice was more than ninety days after accrual of the cause of action.

[14] The NJTCA provides:

A claim shall be presented by the claimant or by a person acting on his behalf and shall include: a. The name and post office address of the claimant; b. The post-office address to which the person presenting the

the notice requirement depends on whether the notice provided by Plaintiff satisfies the purposes of the Act.  *See also, e.g.*, *Lebron v. Sanchez*, 970 A.2d 399, 405-06 (N.J. Super. Ct. App. Div. 2009) (citation omitted); *Borough of Seaside Park v. Sadej*, Civil Action No. A-6596-06T3, 2009 WL 2059903, at *10 (N.J. Super. Ct. App. Div. 2009).   In any event, the notice must inform the public entity or employee of the nature of the claim to be asserted.  *See Newberry v. Township of Pemberton*, 726 A.2d 321, 326 (N.J. Super. App. Div. 1999) ("We are satisfied that at the very least a notice, in order to comply with N.J.S.A. 59:8-4c, must give some indication of the asserted basis of the public entity's liability."). The core of Plaintiff's claim is that he was wrongfully terminated from his employment.  While some of the specific acts giving rise to Plaintiff's various state law counts could conceivably be thought to precede the termination date, the better view is that the termination itself represented accrual of the present claims.  Thus, his claims accrued no later than the date of his termination, April 8, 2006.  *See* Am. Compl. ¶ 17; *Beauchamp*, 751 A.2d at 1050 ("Generally, in the case of tortious conduct resulting in injury, the date of accrual will be the date of the incident on which the negligent *act or*

---

claim desires notices to be sent; c. The date, place and other circumstances of the occurrence or transaction which gave rise to the claim asserted; d. A general description of the injury, damage or loss incurred so far as it may be known at the time of presentation of the claim; e. The name or names of the public entity, employee or employees causing the injury, damage or loss, if known; and f. The amount claimed as of the date of presentation of the claim, including the estimated amount of any prospective injury, damage, or loss, insofar as it may be known at the time of the presentation of the claim, together with the basis of computation of the amount claimed.

N.J. Stat. Ann. § 59:8-4.

omission took place." (citations omitted)); *Sadej*, Civil Action No. A-6596-06T3, 2009 WL 2059903, at \*10 (the notice requirement is meant to inform the state actors of the claim to be asserted "to enable [them] to adequately investigate the facts and prepare a defense." (citing *Beauchamp, 751 A.2d at 1052-53*)); *Guerrero v. City of Newark*, 522 A.2d 1036, 1039 (N.J. Super. Ct. App. Div. 1987) ("The purpose of the claims notification requirement in this Chapter is two-fold: (a) to allow the public entity at least six months for administrative review with the opportunity to settle meritorious claims prior to the bringing of suit; (b) to provide the public entity with prompt notification of a claim in order to adequately investigate the facts and prepare a defense.").  Simply put, the purported "notice" here, coming some eight months prior to the allegedly wrongful termination, did not, and, indeed, could not have substantially complied with the NJTCA. The recipients of the notice could not have known from the purported "notice" the facts at issue in this litigation. The notice did not speak to the suspension or to the subsequent termination.

The discretion in the Act to extend the deadline for filing notice does not, in any event, "survive the passage of one year following the accrual date of the claim." *Hill v. Bd. of Educ. of Middletown Twp.*, 443 A.2d 225, 227 (N.J. Super. Ct. App. Div. 1982) (citation omitted).  The absence of notice as required under the NJTCA is apparently a jurisdictional bar.  *See* *Iaconianni v. N.J. Tpk. Auth.*, 565 A.2d 1084, 1086 (N.J. Super. Ct. App. Div. 1989), *certif. denied*, 583 A.2d 299 (N.J. 1990) ("Where the one-year proscription has elapsed prior to the filing of a claimant's application to file a late notice

of claim, the court is without jurisdiction to entertain the motion."). For this reason, Counts Three, Four, Five, Seven, and Nine, which are state law claims, are barred.

Plaintiff does, however, argue that Defendants should be estopped from asserting his noncompliance with the NJTCA's notice requirements. Plf's Opp. Br. at 14. Estoppel is proper "where the interests of justice, morality[,] and common fairness dictate that course." *Johnson v. Does*, 950 F. Supp. 632, 636 (D.N.J. 1997) (quoting *Navarro v. Rodriguez*, 495 A.2d 476, 482 (N.J. Law Div. 1984)) (internal quotation marks omitted). Estoppel is permissible in the context of barring a defendant's defenses, if a state entity or other defendant's conduct leads a claimant to believe that the notice he or she did provide was satisfactory. *Id.* (citing *Murray v. Brown*, 613 A.2d 502, 503 (N.J. Super. Ct. Law. Div. 1991)). Here the Equal Employment Division, the government entity in receipt of the purported notice, was in no position to notify Plaintiff of how to correct the deficiencies in his filing simply because the subject matter of this litigation – the harm connected to the allegedly wrongful suspension and termination – had not yet occurred. In these circumstances, it would be *unfair* to the Defendants to apply estoppel.

Accordingly, Counts Three, Four, Five, Seven, and Nine will be dismissed against the DOC, and against the Individual Defendants in both their official capacities (on sovereign immunity grounds) and their individual capacities (under the NJTCA).[15]

---

[15] The protection of the NJTCA extends to public officials in regard to intentional and non-intentional torts, and without regard to whether or not the suit is brought against the official in his official or individual capacity. *See Lassoff v. New Jersey*, 414 F. Supp. 2d 483, 490 n.19 (D.N.J. 2006) (noting that "[s]uits against a public officer in his *individual capacity* are subject to the notice requirements of the [Tort Claims Act] even though the

C.      **Count Two -- The Title VII Retaliation Claim**

Count Two of the Amended Complaint alleges violations of Title VII.  Am. Compl. ¶¶ 47-52, (Doc. No. 2).  Specifically, Plaintiff alleges that after he engaged in protected activity, i.e., protected First Amendment Speech, Defendants engaged in wrongful retaliatory conduct in violation of Title VII.

The Moving Defendants argue that Plaintiff failed to meet the pre-suit requirements of Title VII.  Defs' Opening Br. at 4-7; Defs' Reply Br. at 4-6.  For example, Moving Defendants argue that Plaintiff failed to comply with the Title VII's charge-filing requirement, particularly that the charge must be filed within one hundred and eighty days of the alleged unlawful employment practice.  For the reasons below, it appears that the Moving Defendants are correct.

Valid Title VII claims for unlawful employment practices require that a plaintiff comply with certain pre-suit procedures.  *See generally* 42 U.S.C. § 2000e-5.  The complaining party must file a charge "within one hundred and eighty days after the alleged unlawful employment practice occurred."  *Id.* § 2000e-5(e)(1).  Moreover, if the Commission dismisses the charge or does not file a civil action within one hundred and eighty days of the charge filing, "the Commission, or the Attorney General in a case involving a government, government agency, or political subdivision, shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge."  *Id.* § 2000e-5(f)(1).  This notice

---

public officer is not entitled to immunity under N.J. Stat. Ann. § 59:3-14." (emphasis added)) (citing *Velez*, 850 A.2d 1238).

constitutes the right-to-sue letter.  *See, e.g.*, *Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 149 (1984) (using the term "right-to-sue letter" in the context of discussing § 2000e-5(f)(1)); *Burgh v. Borough City Council of Montrose*, 251 F.3d 465, 470 (3d Cir. 2001) (using the same term and elaborating on its content and purpose).  As explained in greater detail below, it appears that Plaintiff failed to meet the first requirement, and may have failed to satisfy the second.  Accordingly, his Title VII retaliation claim must be dismissed.

The chronology appears to be as follows.  Plaintiff's Title VII was ripe no later than April 8, 2006, the date of his termination.  Am. Compl. ¶ 17.  In order to maintain a suit for an unlawful employment practice under Title VII, Plaintiff was required to file a charge with the federal Equal Employment Opportunity Commission "within one hundred and eighty days after the alleged unlawful employment practice occurred."  42 U.S.C. § 2000e-5(e)(1).  This pre-suit requirement is not jurisdictional, but rather functions akin to a statute of limitations.  See *Burgh v. Borough City Council of Montrose*, 251 F.3d 465, 470 (3d Cir. 2001).  Thus, the deadline for making a timely charge filing was on or about October 5, 2006.  However, Plaintiff filed a charge with the Commission on or about January 29, 2007,[16] well beyond the timely filing deadline.

---

[16] The actual filing date is not entirely clear from the copy of the charge Defendants attached to their reply brief.  *See* Defs' Reply Br., Nestor Certif., Ex. A.  Plaintiff's signature is dated January 29, 2007.  The date of the fax as indicated at the top of the page is January 31, 2007.  The notice page is dated February 5, 2007.  Even relying on the earliest date, and, thereby, drawing the factual inferences in Plaintiff's favor, Plaintiff has failed to satisfy this prerequisite to suit.

Thus, as the Moving Defendants' exhibits indicate, Plaintiff's charge was not filed in a timely fashion and the Title VII claim must be dismissed in its entirety.[17]

It might be contended that the Moving Defendants' argument that Plaintiff failed to file a timely charge was waived, because the Moving Defendants failed to expressly raise the issue in their opening brief.  Typically, an argument not raised in an opening brief is waived, and a passing reference to an argument in a brief is likewise insufficient. *Laborers' Intern. Union of N. Am., AFL-CIO v. Foster Wheeler Energy Corp.*, 26 F.3d 375, 398 (3d Cir. 1994) (citations omitted).  The waiver rule does not apply here.  In this case, in their opening brief, the Moving Defendants contested the validity of Plaintiff's Title VII claim, and expressly argued that Plaintiff failed to meet pre-suit requirements.  Defs' Opening Br. at 4-5.  The Moving Defendants argued that Plaintiff failed to file a charge with the Commission and, failed to make a timely filing.  *See* Defs' Opening Br. at 4-5.  *Moving Defendants even cited law regarding the timeliness requirement in their opening brief.  Id.*  Plaintiff responded in his opposition by arguing that he had indeed

---

[17] Defendants also argue that Plaintiff failed to file the instant suit within ninety days of receiving the right-to-sue letter.  Defs' Reply Br. at 6.  The ninety day period, set by Title VII, generally begins on the date "the complainant receives the right-to-sue letter." *Burgh*, 251 F.3d at 470 (citations omitted).  The Third Circuit strictly construes the ninety day period and, "in the absence of some equitable basis for tolling, a civil suit filed even one day late is time-barred and may be dismissed."  *Id.* (citing *Figueroa v. Buccaneer Hotel, Inc.*, 188 F.3d 172, 176 (3d Cir. 1999)).

Plaintiff's proffered right-to-sue letter is dated August 16, 2007.  *See* Plf's Opp. Br., Ex. A.  Arguably, the ninety day period lapsed on or about November 14, 2007, but here Plaintiff did not file the instant suit until December 21, 2007.  While it seems likely that Plaintiff's filing may have fallen well outside the ninety day window, Defendants have not clarified, and without discovery probably could not have clarified, the date on which Plaintiff actually received the right-to-sue letter from the EEOC Commission, i.e., the date which would appear to start the ninety day window.  *See* Defs' Reply Br. at 6.

filed a charge.  Plf's Opp. Br. at 6-7.  And Moving Defendants replied by reproducing as an exhibit a copy of the charge referred to by Plaintiff in his opposition.  Defs' Reply Br., Nestor Certif., Ex. A.  That charge demonstrates that the filing was not timely, a fact somewhat artfully omitted from Plaintiff's opposition brief.[18]

A court may consider, in a motion to dismiss, matters of judicial notice and public record, as well as any documents on which Plaintiff's complaint relies.  *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007); *Buck v. Hampton Twp. School District*, 452 F.3d 256, 260 (3d Cir. 2006) (citing *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002)); 5B CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 1357 (3d ed. 2004)) ("In evaluating a motion to dismiss, we may consider documents that are attached to or submitted with the complaint … and any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case." (brackets in the original, quotation marks omitted)).[19]  Documents such as a charge filed with the Commission and a right-to-sue letter fall into the category of a public record.

---

[18] *See, e.g.*, Plf's Opp. Br. at 7-8 (in reciting applicable law, omitting the ninety day limitation on filing a civil suit after the aggrieved party receives notice from the EEOC or the Attorney General); *id.* at 6-7 (reciting the one hundred and eighty day charge-filing provision of Title VII but failing to address the application of that requirement to the present case).

[19] It is interesting to note that pursuant to the Federal Rules of Evidence, the Court may take judicial notice (at trial) of adjudicative facts that are not subject to reasonable dispute.  F.R.E. 201(a)-(b).  Specifically, such facts are "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." F.R.E. 201(b).

*See Shannon v. City of Philadelphia*, Civil Action No. 98-5277, 1999 WL 126097, at *2 n.3 (E.D. Pa. Mar. 5, 1999). Thus, the Court may properly consider this document.

Additionally, the Court may consider undisputedly authentic documents attached to a motion to dismiss when "the plaintiff's claims are based on the document." *Pension Benefit Guar. Corp.*, 998 F.2d at 1196 (citations omitted). This rule prevents a plaintiff with weak claims from surviving dismissal "simply by failing to attach a dispositive document on which it relied." *Id.* (citing *Goodwin v. Elkins & Co.*, 730 F.2d 99, 113 (3d Cir. 1984) (Becker, J., concurring)). The same reasoning reaches the right-to-sue letter attached to Plaintiff's opposition brief and the EEOC charge attached to Defendants' Reply Brief. This Court has previously considered a charge and a right-to-sue letter as "undisputedly authentic documents." *Davis v. UPS*, Civil Action No. 07-5923, 2008 WL 4104680, at *2 (D.N.J. Sept. 4, 2008) (citing *Goodling v. Warner-Lambert Co.*, 744 F.2d 354, 358 n.5 (3d Cir. 1984)). Plaintiff certainly relied on the EEOC charge and right-to-sue letter in making his Title VII retaliation claim before this Court, as such a claim requires that a plaintiff comply with all pre-suit procedural filing and timeliness requirements.

Moreover, although confining the court to the pleadings in a motion to dismiss serves a notice function, "[w]hen a complaint relies on a document … the plaintiff obviously is on notice of the contents of the document, and the need for a chance to refute evidence is greatly diminished." *Pension Benefit Guar. Corp.,* 998 F.2d at 1196-97. Here, Plaintiff cannot complain of surprise at the existence and contents of the charge and the right-to-sue letter, because *he filed* the charge with the EEOC, because *he produced*

*the right to sue letter* as an exhibit to his opposition brief, and because he filed the civil complaint in this action which necessarily relies on these documents.[20]

Plaintiff also contends that he met the charge-filing requirement by filing the EED Complaint on August 2, 2005. *See* Plf's Opp. Br. at 7-8. Plaintiff seems to present two separate arguments on this point, both of which are insufficient to prevent dismissal. First, Plaintiff suggests that the internal complaint filed with the Equal Employment Division was a filing "with [the] state agency charged with enforcing the laws against employment discrimination," Plf's Opp. Br. at 6 (quoting *Waiters v. Parsons*, 729 F.2d 233, 237 n.8 (3d Cir. 1984) (citing 42 U.S.C. § 2000e-5(c), (d))), and that such a filing is an alternative to initially filing with the EEOC, although a plaintiff so filing with a state agency must, nevertheless, also file with the EEOC within three hundred days of the alleged wrong. EEOC. *See* 42 U.S.C. § 2000e-5(e)(1). However, Plaintiff in this action alleges retaliation, which took the form of suspension and subsequent termination on or about April 8, 2006. *See* Am. Compl. ¶¶ 17, 47-53. Thus, even assuming the EED Complaint was filed with a proper state agency, he still did not file a meaningful charge, state or federal, regarding retaliation. The EED Complaint, which Plaintiff claims acted

---

[20] At least one other court has reached a similar conclusion. For example, in *Curtis v. Tyco Retail Healthcare Group, Inc.*, Civil Action No. 06-4302, 2007 WL 1545613 (E.D. Pa. May 24, 2007), the Eastern District of Pennsylvania considered exhibits appended to a plaintiff's Motion for Leave to File a Surreply Brief that were "referenced in Plaintiff's original response and [were] central to the timeliness issue raised by the Defendant's motion." *Id.* at *3 n.1.

as a charge, *preceded* Plaintiff's suspension and termination, the purported acts of retaliation. *See* Plf's Opp. Br. at 6-8, Ex. B; Am. Compl. ¶ 17.[21]

Second, Plaintiff argues that he is excused from complying with the pre-suit requirements because his Title VII claim falls within the scope of his prior EED Complaint, which referenced retaliation. Plf's Opp. Br. at 8-9. The test for whether a plaintiff must exhaust administrative remedies for "new acts that occur within the pendency of" a case already filed with the Commission is "whether the acts alleged in the subsequent Title VII suit are fairly within the scope of the prior EEOC complaint, or the investigation arising therefrom." *Waiters*, 729 F.3d at 237 (citations omitted). Complainants must also be able to bring suit on the previous charge or complaint. *Id.* at 235 (stating that a complainant need not exhaust administrative remedies "with respect to a claim concerning an incident which falls within the scope of a prior EEOC complaint or the investigation which arose out of it, *provided that the victim can still bring suit on the earlier complaint*" (emphasis added)). Even assuming Plaintiff's EED Complaint provided meaningful notice of the subsequent suspension and termination, that is, even if

---

[21] Plaintiff alleges that some retaliation preceded the filing of the EED Complaint and that the internal complaint described that retaliation. However, in his Amended Complaint, Plaintiff describes this retaliation as an effort to "silence[], intimidate[] and punish[]" him. Am. Compl. ¶ 47; *see also id.* ¶¶ 30, 41, 48. These allegations are wholly conclusory; they come absent specificity and detail. The retaliation that is described in rich factual detail takes the form of suspension and termination – all of which happened after the filing of the EED Complaint. Because the prior allegations lack factual specificity, they are insufficient to withstand a motion to dismiss. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009) (explaining that the federal pleading standard "marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions").

at some abstract level the subsequent alleged wrongs were within the scope of an investigation arising from the prior filing, his EEOC charge was filed more than three hundred days after the EED Complaint was filed.[22]   *See* 42 U.S.C. § 2000e-5(e)(1).   It was thus filed too late for Plaintiff to bring suit in regard to the wrongs alleged in the first-filed EED Complaint.   Thus even if the second-in-time EEOC charge describes retaliation within the scope of the first-filed EED Complaint (or an investigation connected to that complaint), the EEOC filing did not preserve a cause of action for the alleged wrongs that preceded the EED Complaint.   Because the cause of action associated with the alleged wrongs that preceded the EED Complaint can no longer be brought, the EEOC charge is not within the scope of the prior filing.   *Waiters*, 729 F.3d at 237.   It follows that no timely EEOC charge has been filed.

Thus the Title VII retaliation claim fails.[23]

### D.      Applicability of Title VII Provisions to the Individual Defendants

---

[22] The latest date Plaintiff could have timely filed a charge with the Commission was three hundred days from August 2, 2005; i.e., on or about May 29, 2006.   However, he filed a charge with the Commission on or about January 29, 2007, well after this deadline.   *See* Defs' Reply Br., Nestor Certif., Ex. A.

[23] Defendants also argue, in their Reply Brief, that the EEOC charge was not meaningful notice because it only alleged race, disability, and age discrimination, as opposed to retaliation in consequence of the exercise of protected First Amendment Speech, as alleged in the Amended Complaint.   As this argument was not raised in Defendants' Opening Brief, the Court does not address it.   Plaintiff also argues that the right-to-sue letter, Plf's Opp. Br., Ex. B, only grants a right-to-sue in regard to Plaintiff's age discrimination claim under the ADEA, but no coordinate right is granted under Title VII. Again, as this argument was not raised in Defendants' Opening Brief, the Court does not address it.   Finally, Defendants argue that the EED Complaint was filed with the wrong state agency as a matter of law.   Again, as this argument was not raised in Defendants' Opening Brief the Court does not address it.

The Moving Defendants assert that Count Two should be dismissed against the individual Defendants because individual employees may not be held personally liable under Title VII for any unlawful employment practices.  Defs' Opening Br. at 5-6.  The Court agrees. *See Sheridan v. E.I. DuPont de Nemours and Co.*, 100 F.3d 1061, 1077-78 (3d Cir. 1996) (en banc) (taking a position supported by a "clear majority of the courts of appeal" and holding that "Congress did not intend to hold individual employees liable under Title VII"); *Emerson v. Thiel Coll.*, 296 F.3d 184, 190 (3d Cir. 2002) (citing *Sheridan*, 100 F.3d at 1078) ("[W]e are persuaded that Congress did not intend to hold individual employees liable under Title VII.")  Although, Plaintiff cites pre-1996 district court authority to the contrary, this Court is bound by Third Circuit authority.

Thus, the Title VII Count against the individual defendants fails.

## V.    CONCLUSION

For the reason elaborated above, the Court **GRANTS** in part and **DENIES** in part Moving Defendants' Motion, (Doc. No. 35).  The Court:

> (A) dismisses Count One (the Section 1983 Count) against DOC, and against the Individual Defendants in their official capacities (but not their individual capacities);
> (B) dismisses Count Two (the Title VII Count) against DOC and the Individual Defendants;
> (C) dismisses Counts Three, Four, Five, Seven, and Nine (state law counts) against DOC, and against the Individual Defendants in their official and individual capacities;
> and,
> (D) dismisses Counts Eight and Ten (state law counts) against DOC and the Individual Defendants in their official capacities (but not their individual capacities).

Therefore, this action will go forward in regard to Count Six (the FMLA Count) against all Defendants, because dismissal has not been sought, and in regard to Count One (the Section 1983 Count) against the individual Defendants in their individual capacities only, and in regard to Counts Eight and Ten (state law counts) against the Individual Defendants in their individual capacities only.

An appropriate order accompanies this opinion.

s/ William J. Martini
**William J. Martini, U.S.D.J.**

DATED: February 22, 2010